| | | |
|---|---|---|
| HARRIET PARKER, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 12 C 8275 |
| v. | ) | |
| | ) | Judge Joan B. Gottschall |
| ILLINOIS HUMAN RIGHTS COMMISSION, | ) | |
| and MARTIN CASTRO, individually, and | ) | |
| JOHN DOE Defendants to be named later, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION & ORDER

Plaintiff Harriet Parker has brought a thirteen-count First Amended Complaint against defendants the Illinois Human Rights Commission ("the IHRC" or "the Commission") and IHRC Chairman Martin Castro in his personal capacity.  Against the IHRC, she alleges race and sex discrimination and retaliation, in violation of Title VII, 42 U.S.C. § 2000e *et seq.* (Counts V-VII).  Against Castro, she alleges violations of her First Amendment right to free speech (Count I), her Fourteenth Amendment rights to due process and equal protection (Counts II and III), and 42 U.S.C. § 1981 (Count IV), all pursuant to 42 U.S.C. § 1983.  She also brings various state-law claims against Castro:  race and sex discrimination and retaliation, in violation of the Illinois Human Rights Act ("IHRA") (Counts VIII-X); retaliatory discharge, under Illinois common law (Count XI); violation of the Illinois Whistleblower Act ("IWA"), 740 Ill. Comp. Stat. 174/5 (Count XII); and libel *per se*, under Illinois common law (XIII).

Now before the court is the defendants' motion to dismiss the complaint in its entirety, pursuant to Federal Rules of Civil Procedure 12(b)(1) and (6).  The court rules as follows.  Counts V and VI (Title VII discrimination) against the IHRC are dismissed without prejudice.  Counts VIII and IX (IHRA race and sex discrimination) against Castro are dismissed without

prejudice.  Counts III (equal protection) and IV (§ 1981) against Castro are dismissed without prejudice insofar as they allege race and sex discrimination.  Counts II (due process), X (IHRA retaliation), XI (retaliatory discharge), XII (IWA), and XIII (libel *per se*) against Castro are dismissed with prejudice.  The motion to dismiss is denied as to Count VII against the IHRC (Title VII retaliation), and Counts I, III, and IV against Castro (§ 1983 retaliation).

## I. FACTS

According to her complaint, Parker is a female African-American attorney who was hired as the general legal counsel for the IHRC in December 2005.  The IHRC is the state agency responsible for providing a neutral forum for resolving complaints of discrimination filed under the IHRA, and for providing information to the public about the Act.  Its primary responsibility is to make impartial determinations whether there has been unlawful discrimination as defined by the Act.  Defendant Castro is Chairman of the IHRC.  The IHRC Board of Commissioners ("the Board") is comprised of part-time political appointees.

Parker attached to her complaint an annual performance review that includes a description of her position.  As general counsel, Parker's job description included serving as legal counsel to the Commission, advising three member panels of the Commission and the full Commission on specific cases, drafting proposed orders for panels, offering "consultation to the Commission which may affect policy, decision[s], and actions of the agency," supervising staff attorneys and administrative staff, helping the Illinois Attorney General to defend Commission decisions, assisting the IHRC's Executive Director, preparing proposed rules and regulations of the IHRC, and performing "other duties . . . reasonably within the scope of the duties enumerated."  (First Am. Compl. Exs. C & D, ECF No. 22.)  Parker was "[s]ubject to

management by the Chairman" of the IHRC. (*Id.*) In September 2008 and September 2009, her yearly evaluation rated her as "exceptional." (*Id.*)

In an IHRC hearing on July 28, 2010, Parker alleges, she became concerned by the behavior of former Commissioner Gregory Simoncini, who she felt showed an inappropriate bias in favor of an African-American female claimant in an employment discrimination case before the IHRC. Parker also contends that Simoncini was "denigrating and racially biased and insensitive toward" IHRC Deputy General Counsel Donyelle Gray, an African-American attorney who reported to Parker. (First Am. Compl. 7.) She further claims that Simoncini was "outwardly emotional, volatile, and angry" to an inappropriate degree during the public hearing. (*Id.*)

Parker alleges that "Simoncini once again displayed the same type of inappropriate biases and behaviors" during a November 16, 2010, oral argument in the same case, and that he demanded that Gray be removed as the attorney representing the IHRC during the argument. Parker alleges that during the November 16, 2010, oral argument, it appeared to her "that Commissioner Marti Baricevic was also displaying an inappropriate bias in favor of the claimant and against the respondent." (*Id.*) The three-member panel of Commissioners ruled 2-1 in favor of the claimant, despite Parker's protests that the claimant had failed to prove her case.

After the hearing, Parker complained to Castro about the behavior of the Commissioners in the case. She made similar complaints to the Chief Legal Counsel in the Office of the Governor and to her assigned liason in the Office of the Governor. (*Id.* at 8.) "In each of these verbal reports [Parker] specifically addressed her concern that Simoncini had acted unprofessionally and discriminatorily in connection with the . . . case." (*Id.*) Parker included her criticisms of the conduct of Commissioners Simoncini and Baricevic in the case in a December

2010 "written monthly report to the Office of the Governor, which she was required to submit as part of her job." (*Id.* at 9.)

After a hearing in another IHRC case on January 26, 2011, Parker called Castro to complain that Commissioner Simoncini had "displayed the same type of maltreatment" toward Gray "and also snapped at Evelio Mora, the Assistant General Counsel." (*Id.*) She "gave Castro a list of occasions on which Simoncini had displayed inappropriate hostility" to non-male or non-white IHRC employees. (*Id.*) Parker also complained again to the Chief Legal Counsel and her assigned liason in the Office of the Governor. Parker claims that, in making these complaints, she "went far beyond her duties as general counsel of the IHRC" and expressed her "personal outrage." (*Id.* at 10.)

Castro acknowledged a few days later that he had been directed by the Governor's Office to rectify the situation with Commissioner Simoncini. Castro convened a meeting in early February 2011, during which Simoncini berated Parker for complaining about him to the Governor's Office. In February 2011, Castro convened an "executive session" of the IHRC, in which it voted that it had no confidence in Parker as the general counsel to the IHRC. The IHRC's Executive Director advised Parker of her termination on May 20, 2011.

On November 29, 2011, Parker filed a complaint with the Equal Employment Opportunity Commission and the Illinois Department of Human Rights. The charge named the IHRC as her employer. (First Am. Compl. Ex. A.) Parker received a right-to-sue letter dated July 17, 2012. (First Am. Compl. Ex. B.) She initiated this lawsuit on October 15, 2012, and filed the Amended Complaint on January 23, 2013.

## II. LEGAL STANDARDS

To survive a Rule 12(b)(6) motion to dismiss, a complaint must comply with Rule 8(a) by providing "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A motion to dismiss should be granted if the plaintiff fails to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The factual allegations in a complaint must "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555-56; *see also Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010) ("[P]laintiff must give enough details about the subject-matter of the case to present a story that holds together."). For purposes of a motion to dismiss, the court takes all facts alleged in the complaint as true and draws all reasonable inferences from those facts in the plaintiff's favor, although conclusory allegations that merely recite the elements of a claim are not entitled to this presumption of truth. *Virnich v. Vorwald*, 664 F.3d 206, 212 (7th Cir. 2011).

Pursuant to Rule 12(b)(1), the court must dismiss a complaint if it lacks subject-matter jurisdiction over a case. To survive a Rule 12(b)(1) motion to dismiss, the plaintiff bears the burden of establishing that the court has jurisdiction over its claims. *United Phosphorous, Ltd. v. Angus Chem. Co.*, 322 F.3d 942, 946 (7th Cir. 2003) (*en banc*). The court takes the allegations in the complaint as true, viewing all facts and any reasonable inferences in the light most favorable to the plaintiff. *See, e.g.*, *Scott Air Force Base Props. v. Cnty. of St. Clair, Ill.*, 548 F.3d 516, 519 (7th Cir. 2008). The standard for a Rule 12(b)(1) motion to dismiss differs from that governing a Rule 12(b)(6) motion only in that the court "'may properly look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists.'" *Apex Digital, Inc. v.*

*Sears, Roebuck & Co.*, 572 F.3d 440, 444 (7th Cir. 2009) (quoting *Even v. Astrue*, 536 F.3d 651, 656-57 (7th Cir. 2008) (additional citations omitted)).

### III. ANALYSIS

**A.  Title VII Claims against the IHRC (Counts V-VII)**

The defendants argue that Parker's discrimination and retaliation claims under Title VII should be dismissed because she has not alleged that a similarly situated employee who was not a member of a protected class was treated more favorably than she was, as required to make out a prima facie case of discrimination or retaliation.  The court addresses the discrimination and retaliation claims in turn.

1. Discrimination (Counts V and VI)

A plaintiff may prove a violation of Title VII or §§ 1981 and 1983 by either the "direct" or the "indirect" method.  In other words, she may either present direct evidence that an adverse employment action was motivated by discriminatory animus, or she may proceed indirectly through a burden-shifting approach.  *Burks v. Wis. Dep't of Transp.*, 464 F.3d 744, 751 n.3 (7th Cir. 2006).  As the defendants point out, proceeding by the indirect method would require Parker to make out a prima facie case of discrimination by establishing that she belongs to a protected class, her job performance met legitimate expectations, she suffered an adverse employment action, and a similarly situated individual not in the protected class was treated more favorably. *See id.* at 750-51.  Although Parker has clearly alleged the first three elements, she has not alleged that a similarly situated non-black-and-female coworker was treated more favorably than she was.  Indeed, given Parker's role as general counsel of the IHRC, it would likely be difficult for her to identify a coworker with a comparable job, subject to the same standards, who engaged in similar behavior.

Even so, defendants' argument for dismissal is inapt, for two reasons. First, it ignores that Parker may also attempt to establish that she was terminated because of discriminatory animus under the *direct* method, which does not require her to make out a prima facie case. The Seventh Circuit has recently elaborated on the use of the direct method of proving employment discrimination:

> "Direct" proof includes both evidence explicitly linking an adverse employment action to an employer's discriminatory animus, *see, e.g.*, *Smith v. Wilson*, 705 F.3d 674, 677 (7th Cir. 2013); *Diaz v. Kraft Foods Global, Inc.*, 653 F.3d 582, 587 (7th Cir. 2011), and circumstantial evidence that would permit the trier of fact to infer that discrimination motivated the adverse action, *see Diaz*, 653 F.3d at 587. In order to illustrate the idea that the circumstantial evidence, taken as a whole, must permit that inference, we have used the metaphor of a mosaic whose individual tiles add up to a complete picture. . . . All these cases mean is that the circumstantial evidence must be strong enough, taken as a whole, to allow the trier of fact to draw the necessary inference. Typical kinds of evidence used for this purpose include "(1) ambiguous statements or behavior towards other employees in the protected group; (2) evidence, statistical or otherwise, that similarly situated employees outside of the protected group systematically receive better treatment; and (3) evidence that the employer offered a pretextual reason for an adverse employment action." *Diaz*, 653 F.3d at 587.

*Morgan v. SVT, LLC*, No. 12-3589, at *9-10 (7th Cir. Aug. 1, 2013).

Second, the sufficiency of a complaint is not subject to review under the more demanding summary judgment standards. Even when a plaintiff proceeds by the burden-shifing method, for a Title VII claim to survive a Rule 12(b)(6) motion, a plaintiff need not allege all of the elements of a prima facie case of discrimination. Rather, the plaintiff must meet two requirements:

> First, the complaint must describe the claim in sufficient detail to give the defendant fair notice of what the claim is and the grounds upon which it rests. Second, its allegations must plausibly suggest that the plaintiff has a right to relief, raising that possibility above a 'speculative level'; if they do not, the plaintiff pleads itself out of court.

*Tamayo v. Blagojevich*, 526 F.3d 1074, 1084 (7th Cir. 2008) (quoting *Equal Emp't Opportunity Comm'n v. Concentra Health Servs.*, 496 F.3d 773, 776 (7th Cir. 2007) (internal citations and

quotations omitted)). In other words, even if she is proceeding by the indirect method, Parker does not need to plead the elements of a prima facie case.

Parker does, however, need to include allegations in her complaint that plausibly suggest that her termination was based on her race or sex. Parker has alleged that Commissioner Simoncini displayed hostile and discriminatory behavior toward women of color, particularly Deputy General Counsel Donyelle Gray. The complaint does not specify what statements Simoncini actually made; it alleges that he was "inappropriately denigrating and racially biased and insensitive toward" Gray. Parker also alleges that Simoncini snapped at Assistant General Counsel Evelio Mora.

These allegations are insufficient to support an inference that Parker's termination resulted from race or sex discrimination. Parker claims that Simoncini was inappropriately biased in *favor* of an African-American female claimant in a case before the IHRC. Furthermore, Parker was terminated not by Simoncini, but by Castro and the Board of Comissioners, of which Simoncini was but one of thirteen members. The complaint alleges that Simoncini served as a Commissioner until March 2011; he was no longer on the Board in May 2011, when Parker was terminated. Because the complaint does not link Simoncini's alleged hostility toward women of color to Parker's termination by the IHRC, Counts V and VI are dismissed without prejudice.

2. Retaliation (Count VII)

Turning to Count VII, the court notes that the defendants have not directly addressed Parker's retaliation claim—they merely argue that it fails for the same reasons that her other Title VII claims fail. To establish retaliation under the direct method, an employee must show that: (1) she engaged in a statutorily protected activity; (2) she suffered a materially adverse

action by her employer; and (3) a causal connection exists between the two. *Stephens v. Erickson*, 569 F.3d 779, 786 (7th Cir. 2009). Complaining about discrimination is a statutorily protected activity. *Id.* at 787. Parker suffered an adverse employment action when she was terminated. *See Tyler v. Ispat Inland Inc.*, 245 F.3d 969, 972 (7th Cir. 2001). To establish a causal link between her protected activity and termination, Parker may rely on direct or circumstantial evidence. *Treadwell v. Office of Ill. Sec'y of State*, 455 F.3d 778, 781 (7th Cir. 2006).

Here, the primary circumstantial evidence alleged by Parker is the timing of the termination. According to the complaint, after a hearing on January 26, 2011, Parker called Castro to complain about Commissioner Simoncini's behavior, which she characterized as unlawful racial and gender discrimination. She also complained again to the Chief Legal Counsel and to her assigned liason in the Office of the Governor. Castro acknowledged a few days later that he had been directed by the Governor's Office to rectify the situation with Commissioner Simoncini. Shortly thereafter, in February 2011, Castro convened an "executive session" of the IHRC, in which it voted that it had no confidence in Parker as the general counsel to the IHRC. This sequence of events, combined with the positive performance reviews that Parker previously received, constitutes enough circumstantial evidence of a causal connection to overcome the motion to dismiss. The motion to dismiss Count VII is denied.

**B. Claims against Castro**

1. <u>First Amendment Retaliation (Count I)</u>

Parker claims that Castro orchestrated her termination in retaliation for her exercise of her freedom of speech. To establish a prima facie case of First Amendment retaliation, pursuant to 42 U.S.C. § 1983, Parker must allege that her speech was constitutionally protected, she

suffered a deprivation likely to deter free speech, and her speech was a factor motivating the deprivation. *See Massey v. Johnson*, 457 F.3d 711, 716 (7th Cir. 2006). The defendants argue that Parker has failed to allege that she engaged in speech protected by the First Amendment.

As the defendants point out, the Supreme Court has narrowed what constitutes protected speech by government employees, holding that "when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." *Garcetti v. Ceballos*, 547 U.S. 410, 421 (2006). But, as the Supreme Court also explained, "public employees do not surrender all their First Amendment rights by reason of their employment. Rather, the First Amendment protects a public employee's right, in certain circumstances, to speak as a citizen addressing matters of public concern." *Id.* at 417. Thus, "before analyzing whether an employee's speech is of public concern, a court must determine whether the employee was speaking 'as a citizen' or, by contrast, pursuant to his duties as a public employee." *Sigsworth v. City of Aurora*, 487 F.3d 506, 509-10 (7th Cir. 2007) (quoting *Garcetti*, 547 U.S. at 422).

The defendants argue that Parker's First Amendment claim is barred by *Garcetti* because she was acting in her role as the IHRC's general counsel and pursuant to her job duties when she made statements about Commissioner Simoncini's behavior with respect to a case before the IHRC. She was thus speaking as a public employee and not as a private citizen. In response, Parker argues that she was voicing her personal outrage and that reporting discriminatory conduct within the agency was not part of her job description and was not work product of the general counsel. She contends that as general counsel, she was charged with advising and consulting with the Commission as to the cases before it, not reporting internal misconduct.

At this stage in the litigation, the court draws all inferences in Parker's favor. According to the facts alleged in the complaint, Parker did not make her comments about Commissioner Simoncini public, but rather reported up the chain of command to Castro and to the Office of the Governor. Her comments related to the work of the Commission. But neither the fact that the comments were made internally nor the fact that they were about the subject of Parker's work is dispositive under *Garcetti*. *See id.* at 420-21. Parker alleges that the comments were not made as part of her official duties, but in her capacity as a private citizen. The court must assume for purposes of the motion to dismiss that her duties did not involve drawing attention to such misconduct, and that her comments were not made pursuant to her role as general counsel. The defendants' motion to dismiss Count I is therefore denied. The court expresses no opinion on whether Parker will ultimately be able to prove that her duties as IHRC General Counsel did not include reporting potential misconduct of the Commissioners during IHRC hearings.

## 2. Due Process (Count II)

Parker alleges that Castro violated her Fourteenth Amendment right to due process by terminating her employment for discriminatory reasons and by disclosing false and stigmatizing information about her that harmed her reputation and future employment prospects. The court construes these as allegations that she was deprived of procedural due process and an occupational liberty interest. The defendants argue that Parker has not identified a constitutionally protected property interest in her at-will employment that can support a due-process claim. They further argue that, in alleging that Castro's statements about her harmed her reputation, she has not pleaded that she was deprived of an occupational liberty interest.

"A procedural due process violation occurs when (1) conduct by someone acting under the color of state law; (2) deprives the plaintiff of a protected property interest; (3) without due

process of law." *Redd v. Nolan*, 663 F.3d 287, 296 (7th Cir. 2011). The Supreme Court and the Seventh Circuit have made it clear that an at-will employee does not have a constitutionally protected property interest in her job that can support a due-process claim. *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564 (1972); *Cromwell v. City of Momence*, 713 F.3d 361, 364 (7th Cir. 2013) ("In Illinois 'a person has a property interest in his job only where he has a legitimate expectation of continued employment based on a legitimate claim of entitlement.'") (quoting *Moss v. Martin*, 473 F.3d 694, 700 (7th Cir. 2007)). Parker argues that she "had an implied contractual right to continue in her employment without being subjected to unlawful discrimination and to not be terminated in ways that would violate the Commission's own policies and the laws of the United States." (Pl.'s Resp. to Mot. to Dismiss 7, ECF No. 32.) But she has not identified any basis—such as "a state law, an ordinance, a contract, or some other understanding"—for a claim of entitlement to continued employment. *Redd*, 664 F.3d at 296. Her procedural due-process claim fails accordingly.

Insofar as the complaint alleges the deprivation of an occupational liberty interest, it also fails. Parker argues that she "was deprived of her liberty interests when she was falsely accused of acts and omissions that would be damaging to her reputation." (Pl.'s Resp. to Mot. to Dismiss 8.) She argues that "Castro caused [her] to be subjected to a vote of 'no confidence' that ultimately led to [her] termination," that "she suffered professional humiliation and her career opportunities (at the IHRC and future opportunities) were adversely impacted," and that "the stigmatizing label of 'no confidence' became a matter of public record." (*Id.*)

In order to plead the deprivation of an occupational liberty interest, a plaintiff must allege that "(1) [s]he was stigmatized by the defendant's conduct; (2) the stigmatizing information was publicly disclosed; and (3) [s]he suffered a tangible loss of other employment

opportunities as a result of public disclosure." *McMath v. City of Gary*, 976 F.2d 1026, 1031-32 (7th Cir. 1992). The deprivation of an occupation liberty interest occurs when the plaintiff's "good name, reputation, honor or integrity" are threatened by "such charges as immorality, dishonesty, alcoholism, [or] disloyalty" or when "the state imposes a stigma or other disability on the individual which forecloses other opportunities." *Munson v. Friske*, 754 F.2d 683, 693 (7th Cir. 1985). "In such cases, the employee's good name, reputation, honor or integrity must be called into question in a manner that makes it virtually impossible for the employee to find new employment in his chosen field." *RJB Props., Inc. v. Bd. of Educ. of the City of Chi.*, 468 F.3d 1005, 1011 (7th Cir. 2006) (citing *Townsend v. Vallas*, 256 F.3d 661, 670 (7th Cir. 2001)).

Here, assuming that Parker had adequately alleged that Castro was responsible for publically disclosed, stigmatizing statements about her, she has not alleged that the stigmatizing remarks made it virtually impossible for her to find new employment, and her allegations do not plausibly support such an inference. The statement allegedly disclosed was that the Board voted that it had "no confidence" in Parker. At most, this statement merely labeled Parker as incompetent. This type of stigmatizing comment is too mild to rise to the level of a constitutional violation, because it by no means disqualified Parker from future employment. Due process rights are not violated when a remark results in "reduced economic returns and diminished prestige, but not permanent exclusion from or protracted interruption of employment." *Munson*, 754 F.2d at 693. The court therefore dismisses Count II against Castro with prejudice.

### 3. Equal Protection and 42 U.S.C. § 1981 Claims (Counts III and IV)

Parker alleges in Count III that Castro violated her right to equal protection under the Fourteenth Amendment by retaliating against her and causing her to lose her employment

13

because of her race and sex. In Count IV, Parker alleges that she was terminated because of her race and her complaints about race discrimination within the IHRC, in violation of 42 U.S.C. § 1981. Both claims are brought pursuant to 42 U.S.C. § 1983. The defendants argue that Parker's § 1983 claims are barred by the Eleventh Amendment because they are essentially claims against the state. Alternatively, they argue that the § 1983 claims against Castro suffer from the same inadequacies as Parker's Title VII Claims against the IHRC.

Addressing the immunity argument first, the Eleventh Amendment bars § 1983 claims against states and state officials. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). But Parker has sued Castro in his personal capacity. A § 1983 suit against an individual state officer in his personal capacity is not subject to the state sovereign immunity bar. *See Thomas v. Illinois*, 697 F.3d 612, 613 (7th Cir. 2012) ("The plaintiff could have avoided both the statutory and the constitutional bar by naming individuals as defendants rather than just a state and an agency of the state."); *Levin v. Madigan*, 692 F.3d 607, 621-22 (7th Cir. 2012) (allowing age discrimination claim to proceed against individual defendants pursuant to § 1983). The discrimination and retaliation claims against Castro are therefore not barred by the Eleventh Amendment.

The discrimination claims are, however, insufficiently pleaded. The analytical framework from Title VII applies to equal-protection claims against public employers. *See McCauley v. City of Chi.*, 671 F.3d 611, 615 (7th Cir. 2011). The same framework applies to § 1981 claims. *McGowan v. Deere & Co.*, 581 F.3d 575, 579 (7th Cir. 2009). To bring § 1983 claims against Castro in his personal capacity, Parker must also allege personal participation by Castro in the alleged deprivation of her constitutional rights. *See Payne ex rel. Hicks v. Churchich*, 161 F.3d 1030, 1039 (7th Cir. 1998) ("Section 1983 creates a cause of action based

on personal liability and predicated upon fault; thus, liability does not attach unless the individual defendant caused or participated in a constitutional deprivation."). The personal responsibility requirement is satisfied where the conduct causing the deprivation occurred at the official's direction or with his knowledge and consent. *Crowder v. Lash*, 687 F.2d 996, 1005 (7th Cir. 1982). In other words, the official "must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye." *Jones v. City of Chi.*, 856 F.2d 985, 992 (7th Cir. 1988).

As explained above with respect to Parker's Title VII discrimination claims, the only allegations of discrimination based on race or sex in the complaint are related to Commissioner Simoncini's alleged hostility toward women of color. But the complaint does not connect any hostile remarks or actions by Simoncini to an adverse employment action taken by Castro, or explain how Simoncini's hostility affected the decision by the Board to terminate Parker. The § 1983 discrimination claims are therefore dismissed without prejudice.

The motion to dismiss is denied as to the § 1983 retaliation claims. As explained above with respect to the Title VII retaliation claim in Count VII, Parker has alleged facts sufficient to support the inference that she was terminated because of her complaints about unlawful racial and gender discrimination by Simoncini. The facts also support an inference that Castro was involved in orchestrating the Board's decision to terminate Parker.

5. IHRA Claims (Counts VIII-X)

The defendants argue that Parker's IHRA claims against Castro (Counts VIII-X) must be dismissed under Rule 12(b)(1) because she has failed to exhaust administrative remedies by filing a charge with the Illinois Department of Human Rights against Castro. Failure to exhaust administrative remedies is not a jurisdictional issue, *Gibson v. West*, 201 F.3d 990, 994 (7th Cir.

2000), and the Court will analyze this motion under Rule 12(b)(6) rather than Rule 12(b)(1). *See Boutte v. Principi*, No. 02 C 1916, 2003 WL 262425, at *1 (N.D. Ill. Jan. 27, 2003). Even so, the court agrees that the IHRA claims should be dismissed. Parker's Illinois Department of Human Rights charge is attached as an exhibit to the complaint. It names as the respondent only the IHRC, not Castro, and it does not mention Castro. (See First Am. Compl. Ex. A, ECF No. 22-1.)

Counts VIII and IX, alleging discrimination based on race and sex pursuant to the IHRA, are dismissed without prejudice. *See Greene v. Meese*, 875 F.2d 639, 643 (7th Cir. 1989) ("[T]he proper remedy for a failure to exhaust administrative remedies is to dismiss the suit without prejudice."). Should Parker re-plead her claims, she should keep in mind the court's preceding discussion of her Title VII race and sex discrimination claims. For the reasons explained above, Parker has not alleged facts that support an inference that Castro discriminated against her on the basis of her race or sex. *See Zaderaka v. Ill. Human Rights Comm'n*, 545 N.E.2d 684, 687 (Ill. 1989) ("In analyzing employment discrimination actions brought under the Human Rights Act, the Commission and the Illinois appellate court have adopted the analytical framework set forth in United States Supreme Court decisions addressing claims brought under Title VII . . . . This court will follow the same approach.").

Count X, alleging retaliation, is dismissed with prejudice. In this case, the alleged retaliatory action—Parker's termination—was taken by Castro in his role as Chairman of the IHRC. "[W]here retaliatory action is undertaken by a supervisor in the name of the employer, the claim lies against the employer, not against the supervisor individually." *Demars-Evans v. Mikron Digital Imaging-Midwest*, 2013 WL 3224588, at *5 (N.D. Ill. June 25, 2013) (quoting *Dorado v. Aargus Sec. Sys., Inc.*, Case No. 00 C 4002, 2002 WL 230776, at *7 (N.D. Ill. Feb. 14, 2002)). *See also Watkins v. Office of State Appellate Defender*, 976 N.E.2d 387, 399 (Ill. App.

Ct. 2012) (explaining that where a company official retaliates against an employee in the name of the employer, the retaliation charge must be brought against the employer).

Parker's complaint alleges that Castro's conduct in orchestrating her termination was personally motivated. But the complaint alleges that Parker was informed of her termination by the Executive Director of the IHRC, who told her "that the Office of the Governor, Chairman Castro and the entire IHRC had decided to take the IHRC Office of the General Counsel in a different direction." (First Am. Compl. 13.) And although Parker alleges that "Castro sought to silence the Plaintiff in order to further his own personal interests and ambitions, and to stifle any criticism of his own job performance," she also alleges that the IHRC "was aware of Castro's unlawful conduct and ratified that unlawful conduct." (*Id.*) Based on these allegations, Parker's retaliation claim must lie against the IHRC, not Castro.

6. Retaliatory Discharge (Count XI)

The defendants argue that Parker cannot sue Castro for common-law retaliatory discharge because Castro was not her employer. The Illinois Supreme Court explained in *Buckner v. Atlantic Plant Maintenance, Inc.*, that "the only proper defendant in a retaliatory discharge action is the plaintiff's former employer." 694 N.E.2d 565, 570 (Ill. 1998). The court agrees with the defendants that, in light of *Buckner*, Parker's retaliatory discharge claim against Castro fails. *See Hoglund v. Signature Mgmt. Grp., Inc.*, No. 08 C 5634, 2009 WL 1269258, at *3 (N.D. Ill. May 4, 2009). Parker concedes as much, and Count XI is dismissed with prejudice.

7. Illinois Whistleblower Act (Count XII)

Parker claims that Castro retaliated against her for disclosing information about potential violations of state or federal law, in violation of the IWA. The defendants argue that the IWA does not provide for the personal liability of a public employee. Parker responds that this

"would leave a gaping hole where public employees could blatantly perpetrate any amount of wrong-doing against other public employees and/or the citizenry, with impunity," and that "it was Castro who decided to terminate Plaintiff in the manner alleged herein and acted personally to further his own political interests." (Pl.'s Resp. to Mot. to Dismiss 12.)

The IWA prohibits an employer from retaliating against an employee who discloses "information to a government or law enforcement agency, where the employee has reasonable cause to believe that the information discloses a violation of a State or federal law, rule, or regulation." 740 Ill. Comp. Stat. 174/15(b). As amended in 2008, the IWA defines "employer" to include "any person acting within the scope of his or her authority express or implied on behalf of [previously described] entities in dealing with its employees." 740 Ill. Comp. Stat. 174/5. This language either limits IWA claims to actions against the employer itself or allows an action to proceed against an individual when that individual's actions may be attributed to the employer.

The court has found little case law interpreting the amended IWA. Several courts in this district have dismissed IWA claims against individual officials or administrators, on the grounds that they were not the plaintiff's employer. *Martorana v. Vill. of Elmwood Park*, No. 12 C 6051, 2013 WL 1686869, at *4 (N.D. Ill. Apr. 18, 2013) (dismissing IWA claim against individual Village officials); *Banks v. Chi. Bd. of Educ.*, No. 11 C 7101, 2013 WL 951111, at *12 (N.D. Ill. Mar. 12, 2013) (dismissing teacher's IWA claim against a principal). These cases, however, do not address the language of the amended statute that defines "employer" to include "any person," language that did not appear in the older version of the IWA. *See Averett v. Chi. Patrolmen's Fed. Credit Union*, No. 06 C 4606, 2007 WL 952034, at *5 (N.D. Ill. 2007) (holding that pre-2008 version of IWA did not provide right of action against individuals). *But see Pratt v.*

*McArnarney*, 2010 WL 2594745, at *7 (C.D. Ill. June 25, 2010) (concluding that a defendant sued in her official capacity could be an "employer" under the amended IWA).

There is good reason to interpret the IWA to allow actions only against the entity that actually employed the plaintiff, not against individual employees of that entity. In the context of federal discrimination statutes such as the ADA and Title VII, the definition of "employer" similarly includes the employer's "agents," but that "is simply a statutory expression of traditional *respondeat superior* liability and imposes no individual liability on agents." *Williams v. Banning*, 72 F.2d 552, 553 (7th Cir. 1995). The language in the IWA appears to be patterned on the federal statutes, and the similar language suggests that the Illinois legislature did not intend to impose individual liability on an employer's agents, but merely to express that the agents' acts are attributable to the employer. *See id.* at 555.

Furthermore, even assuming that the IWA can be read to allow claims against an individual acting within the scope of his employment, Parker fails to state a claim against Castro under the IWA. Parker takes pains in her complaint to allege that Castro's behavior was "personally motivated" and meant "to further his own personal interests and ambitions." These allegations are an effort to plead around the fact that Parker cannot sue Castro in his official capacity, because such an action would be barred by the Eleventh Amendment. *See Harris v. Illinois*, 753 F. Supp. 734, 742 (N.D. Ill. 2010) ("[T]here [is no] indication that the Illinois legislature intended to waive the State's sovereign immunity when expanding the Whistleblower Act's definition of employer."). Unlike an official capacity suit, which is effectively an action against the government entity itself, a personal capacity suit seeks to impose liability on the individual defendant rather than his employer.

Accepting Parker's allegations that his behavior was "personally motivated" as true, Castro was not acting "within the scope of his or her authority express or implied on behalf of" the IHRC when he allegedly orchestrated Parker's termination. The court agrees with the defendants that Parker cannot sue Castro under the IWA because he does not fit within the statute's definition of "employer." The IWA claim in Count XII is therefore dismissed. Given this holding, the court need not address the defendants' alternative arguments that Parker's claim is really against the state and is therefore barred by sovereign immunity, and that the claim is preempted by the IHRA, because the retaliation allegedly prohibited under the IWA was based entirely on conduct protected by the IHRA.

8. Libel *per se* (Count XIII)

Parker alleges that Castro convened an "executive session" of the Commission during which it voted that it had "no confidence" in her as the IHRC's general counsel. She alleges that "Castro's statement of 'no confidence' in the Plaintiff's work as general counsel is libelous *per se* as it impugns her ability to perform her professional duties as a lawyer." (First Am. Compl. 26.) The defendants respond that this claim is barred by the doctrine of absolute immunity that applies to government officials, as well as by the Illinois Tort Immunity Act.

The court agrees with the defendants that Castro enjoys immunity with respect to Parker's libel *per se* claim. "Under Illinois law, an official of the executive branch of state or local government cannot be held liable for statements made within the scope of his official duties." *Lucky Fella LLC v. Vill. of Oak Brook*, No. 11 C 08936, 2013 WL 2580380, at *13 (N.D. Ill. June 11, 2013) (citing *Blair v. Walker*, 349 N.E.2d 385, 389 (Ill. 1976) (holding that absolute privilege applied in libel action against the Governor)); *Horwitz v. Bd. of Educ. of Avoca Sch. Dist. No. 37*, 260 F.3d 602, 617-18 (7th Cir. 2001). The privilege applies irrespective

of any improper motives.  *Horwitz*, 260 F.3d at 617-18 (citing *Geick v. Kay*, 603 N.E.2d 121, 127 (Ill. App. Ct. 1992)).

Assuming that Castro made the statement of "no confidence" and it was published, the libel *per se* claim against Castro is barred by the doctrine of absolute immunity because it was made within the scope of Castro's authority and duties as a public official.  Castro discussed the allegedly defamatory information with the Commissioners in the context of his position as IHRC Chair, and he is absolutely immune from any liability for defamation for statements made pursuant to his official duties.  Count XIII is therefore dismissed with prejudice.

## IV. CONCLUSION

The defendants' motion to dismiss the Amended Complaint is granted in part and denied in part.  Counts V and VI (Title VII discrimination) against the IHRC are dismissed without prejudice.  Counts VIII and IX (IHRA race and sex discrimination) against Castro are dismissed without prejudice.  Counts III (equal protection) and IV (§ 1981) are dismissed without prejudice insofar as they allege race and sex discrimination.  Counts II (due process), X (IHRA retaliation), XI (retaliatory discharge), XII (Illinois Whistleblower Act), and XIII (libel *per se*) against Castro are dismissed with prejudice.  The motion to dismiss is denied as to Count VII against the IHRC (Title VII retaliation) and Counts I, II, and III against Castro (§ 1983 retaliation).


ENTER:


DATED:  October 25, 2013          _____/s/_____
                                  JOAN B. GOTTSCHALL
                                  United States District Judge